**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**ANTONIO R. RICHARDSON,**

    **Plaintiff,**

**vs.**                                              **Case No. 4:19-cv-494-WS-MAF**

**SGT E. PERRY and
SGT K. WASHINGTON,**

    **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Antonio R. Richardson, an inmate proceeding *pro se*, initiated this civil rights action and was granted leave to proceed *in forma pauperis*. ECF Nos. 1, 5. Plaintiff filed an amended complaint, ECF No. 7, which was served upon Defendants. This Cause is currently before the Court upon Defendants' Motion for Summary Judgment accompanied by exhibits. ECF No. 34.

After careful review, for the reasons stated below, Defendants' Motion for Summary Judgment, ECF No. 34, should be GRANTED; and the case should be DISMISSED.

**I.   Allegations of Plaintiff's Amended Complaint, ECF No. 7.**

Plaintiff sues two Defendants, Sergeant A. Perry and Sergeant K. Washington, correctional officers employed at Wakulla Correctional Institution at the time of the incident. ECF No. 7, p. 2. Plaintiff does not state whether he sues Defendants in their individual or official capacities. Id. However, because *pro se* fillings are entitled to liberal construction, the Court construes Plaintiff's complaint as suing Defendants in both their individual and official capacities. Mederos v. United States, 218 F.3d 1252, 1254 (11th Cir. 2000) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)).

Plaintiff alleges that on September 10, 2019, at approximately 6:00 a.m., a female officer reported that she observed Plaintiff "committing a lewd and lascivious act toward her"; and a response team was called. ECF No. 7, p. 5. By the time the team arrived, Plaintiff was in the sallyport. Id. Defendant Perry placed Plaintiff in handcuffs and, along with Defendant Washington, escorted Plaintiff out of the dorm. Id. Plaintiff claims that when they were outside, Defendants became aggressive, picked him up, and slammed him onto his face on the concrete. Id. Plaintiff claims the force was unnecessary because he was compliant. Id. Plaintiff alleges while he was face-down on the ground, Perry got on top of Plaintiff's back, pressed his knee into Plaintiff's back, and said, "stop resisting, stop resisting!" Id., p. 6.

At this time, Washington pushed Plaintiff's face into the concrete and said, "you good, you good!" Id. Plaintiff claims both officers weighed at least 250 pounds. Id. There was no camera operating in that space. Id. According to Plaintiff, because his shoes came off during the attack, he was forced to walk barefoot on all the rocks from the concrete on their way to the medical unit for treatment. Id. Plaintiff claims he had "blood dripping everywhere" but received no treatment. Id. Defendants then took Plaintiff to a confinement cell as punishment for an infraction without any disciplinary report. Id. pp. 7, 9.

Approximately thirty minutes later, an officer making his rounds noticed Plaintiff bleeding, recognized he needed treatment, and brought him to the medical unit. Id. p. 7. Plaintiff claims that he received four stitches in his chin and medication. Id. Plaintiff claims there is no video for any of this although "someone should [have] brought a camera." Id.

Plaintiff alleges that Defendants violated his constitutional rights by using excessive force, which amounts to "cruel and unusual punishment" and by being deliberately indifferent to his medical condition following the attack. Id., p. 8. In addition, Plaintiff raises a due process violation under the Fourteenth Amendment. Id., p. 9. Plaintiff maintains that he suffered injuries to his chin, resulting in permanent damage; the side of his face; and his back.

Id., p. 5. According to Plaintiff, the injuries were such that he could not eat for a few days because he could barely open his mouth and had to lay on his side until he healed. Id., pp. 5-6. Plaintiff seeks $25,000 in compensatory damages, $25,000 in punitive damages, and a declaration that Defendants' actions violated his constitutional rights. Id., p. 9.

## II.  Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper:

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Accordingly, summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citations omitted).

Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for her motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11th Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the non-moving party to present sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

It is the non-moving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise show there are material issues of fact which demand a trial. Fed. R. Civ. P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11th Cir. 1987). The trial judge, at the summary judgment stage, does not weigh the evidence but rather determines whether there is a genuine issue for trial: "if the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); <u>Baldwin Cty., Ala. v. Purcell Corp.</u>, 971 F.2d 1557, 1563 (11th Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing <u>Anderson</u>, <u>supra</u>).

> The Supreme Court has stressed:
>
>> [w]hen the moving party has carried its burden under rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'

<u>Matasushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson</u>, 477 U.S. at 247-48. Finally, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).

## III. Defendant's Motion for Summary Judgment, ECF No. 34

Defendants assert that, on the day of the alleged incident, at approximately 6:02 a.m., they escorted Plaintiff to a pre-confinement medical exam because he had exposed his genitalia to a prison official. ECF No. 34, p. 7. During the escort, Plaintiff "became disorderly and attempted to snatch away from Perry's custodial grasp"; therefore, it became necessary for them to use force against him. Id. Afterward, Plaintiff complied in the escort "to a holding cell for a pre-confinement physical." Id. At 6:22 a.m., Plaintiff was escorted to the medical room; and video shows that there was no blood dripping or leaking as Plaintiff described in his operative complaint. Id. During the examination, Plaintiff spoke with prison and medical staff, did not exhibit any signs of pain in his jaw, and refused medical care. Id., p. 8.

Defendants maintain that because their use of force was not excessive or unnecessary, Plaintiff fails to state an Eighth Amendment claim. Id., p. 9. Furthermore, compensatory or punitive damages are not warranted in this case because Plaintiff cannot demonstrate a physical injury which is greater than *de minimis*. Id., pp. 1, 9-12. Plaintiff's reply was due no later than November 16, 2020. See Orders at ECF Nos. 29, 33. Plaintiff did not submit a reply.

## IV. Discussion

"A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (emphasis and internal quotation marks omitted); Farmer v. Brennan, 511 U.S. 825, 828 (1994). "To prevail on such a claim brought under § 1983, the plaintiff must show: (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation." Townsend v. Jefferson Cty., 601 F.3d 1152, 1158 (11th Cir. 2010). See Franklin v. Curry, 738 F.3d 1246, 1250 (11th Cir. 2013) ("[d]eliberate indifference requires the following: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence").

To establish excessive force, the force must have been "sadistically and maliciously applied for the very purpose of causing harm." Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002). Evidence viewed in the light most favorable to the plaintiff must go "beyond a mere dispute over the reasonableness of the force used" and must "support a reliable inference of wantonness in the infliction of pain." Brown v. Smith, 813 F.2d 1187, 1188

(11th Cir. 1987). "[A] good-faith effort to maintain or restore discipline' does not give rise to an Eighth Amendment violation . . . the malicious or sadistic application of force to cause harm does." Thomas v. Comstock, 222 F. App'x 439, 441-42 (5th Cir. 2007) (citing Hudson v. McMillian, 503 U.S. 1, 7 (1992)). However, once a prisoner has been subdued, "[t]he use of force must stop when the need for it to maintain or restore discipline no longer exists." Skrtich v. Thornton, 280 F.3d 1295, 1304 (11th Cir. 2002) (citation omitted). "When jailers continue to use substantial force against a prisoner who has clearly stopped resisting -- whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated -- that use of force is excessive." Danley v. Allen, 540 F.3d 1298, 1309 (11th Cir. 2008).

Eighth Amendment claims based on *de minimis* uses of physical force are not cognizable unless they involve force that is "repugnant to the conscience of mankind." Hudson, 503 U.S. at 8. Moreover, although a lack of injury "is not conclusive about the presence or absence of constitutional violation [,] a lack of serious injury can illustrate how much force was actually used." Walker v. City of Orlando, 368 F. App'x 955, 956 n.1 (11th Cir. 2010) (internal citation omitted); see also Stephens v. Broward Sheriff's Office, 84 F. Supp. 3d 1327, 1337-38 (S.D. Fla. Dec. 10, 2014) (considering injury to

the extent that it "inform[s] the Court as to the force used by the defendant during the course of the encounter."). While nominal damages may be appropriate in the absence of physical injury, that still requires the "violation of a fundamental constitutional right." Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003).

Thus, a prisoner "who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (citing Hudson, 503 U.S. at 9). Such an encounter involving only *de minimis* force is "insufficient, as a matter of law, to state a constitutional violation." Bryan v. Spillman, 217 F. App'x 882, 886 (11th Cir. 2007). Not "every malevolent touch . . . gives rise to a federal cause of action." Hudson, 503 U.S. at 9. Indeed, federal courts "have routinely held that a single push, shove, punch, or blow . . . simply does not rise to constitutional dimensions." Neal v. Miller, 778 F. Supp. 378, 382 (W.D. Mich. 1991).

Still, "[a]n injury is not de minimis simply because it does not require extensive medical treatment." Philo v. Reams, Case No. 4:11-cv-394-SPM-GRJ, 2014 U.S. Dist. LEXIS 31173, *16 (N.D. Fla. Feb. 5, 2014) Report and Recommendation adopted Philo v. Reams, 2014 U.S. Dist. LEXIS 31174 (N.D. Fla., Mar. 11, 2014) (denying summary judgment as a broken rib was

not considered *de minimis* injury). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." Hudson, 503 U.S. at 9.

There are a number of courts that have determined that similar instances have not caused greater than *de minimis* injury. For example, in Saunders v. Buckner, Case No. 1:07cv501 (LMB/JFA), 2008 U.S. Dist. LEXIS 66852 *, 2008 WL 4104439 (E.D. Va. 2008), plaintiff alleged that officers had no reason to use force when severely beat him. The court determined that plaintiff's injury was *de minimis* because it "consisted only of a laceration to his chin, [and] required 'steri stirps' but not stitches." See also James v. Phillips, Case No. 05 Civ. 1539, 2008 U.S. Dist. LEXIS 30615, 2008 WL 1700125 at *4-*5 (S.D.N.Y. 2008) (finding *de minimis* use of force when prison guard shoved inmate into cell door, causing swelling of the inmate's chin); Castillo v. Jasper, Case No. , 2004 U.S. Dist. LEXIS 7561, *1, 2004 WL 937599 (N.D. Tx. 2004) (the injury was *de minimis* where the only injury prisoner alleged was a cut on his chin, which required no medical care beyond being cleaned).

"Unsupported, conclusory allegations that a plaintiff suffered a constitutionally cognizant injury are insufficient to withstand a motion for

summary judgment." Howard v. Memnon, 572 F. App'x 692, 695 (11th Cir. 2014) (citing Bennett v. Parker, 898 F.2d 1530, 1532-34 (11th Cir. 1990)) (discounting inmate's claim as a conclusory allegation of serious injury that was unsupported by any physical evidence, medical records, or the corroborating testimony of witnesses); see also Whitehead v. Burnside, 403 F. App'x 401, 403 (11th Cir. 2010) (holding prisoner's failure to produce evidence to refute contemporaneous medical records necessitated summary judgment for defendant) (citing Parker, 898 F.2d at 1530).

A. Defendants' Uncontroverted Sworn Statement.

Defendants do not dispute that force was used or that Plaintiff did not incur injuries from the use of force. Rather, they argue that Plaintiff attempted to break free from the escort to the medical unit, which required the application of force in order to maintain discipline. In his sworn statement, Sergeant Perry, maintains he escorted Plaintiff, along with Washington; and Plaintiff "became disorderly and attempted to snatch away from [Perry's] grasp." ECF No. 34-2, p. 2. Perry grabbed Plaintiff's right arm with his left hand and Washington grabbed Perry's left arm with his right hand; and together, they pushed Plaintiff onto the ground chest down. Id. Perry used his body weight to maintain control of Plaintiff. Once additional staff arrived, Plaintiff ceased being disruptive and all force ceased. Id.

Although Plaintiff alleges in the operative complaint that he did not resist, try to break loose, or do anything to necessitate the use of force, he has not presented any evidence to create a genuine dispute over this fact. The record indicates that Plaintiff was taken to the floor where he hit his chin only after he attempted to escape from Perry's grasp. Even assuming Plaintiff had done nothing to warrant being pinned to the floor, there is nothing to demonstrate that this incident was more than the *de minimis* use of force. More importantly, as described below, the medical records and video evidence contradict Plaintiff's assertions.

B. <u>Plaintiff's Medical Records Contradict Plaintiff's Claims</u>.

The uncontested medical records do not reflect that Plaintiff suffered anything more than a *de minimis* injury. Plaintiff's only injury consisted of some bleeding, but he refused medical care. ECF No. 34-3, p. 4. There is no indication in the medical record that Plaintiff received stitches. In fact, neither party presents any evidence that the injury required stitches. Rather, Nurse Caswell's sworn declaration summarizes Plaintiff's medical record for the date of the incident; and, it appears there is no record documenting that Plaintiff received stitches. Caswell, charged with reviewing the post-use of force medical records in this case, states she was "unable to determine by the records . . . if [Plaintiff] ha[d] a laceration to his chin that may have

required stitches. A laceration to the head or face that would require stitches typically bleeds heavily. In addition, a laceration that requires stitches often requires pressure to decrease or stop bleeding. There is no indication that the area on his chin was bleeding heavily." Id., p. 3.

C. The Video Evidence Blatantly Contradicts Plaintiff's Claim.

Most significantly, Plaintiff's claims are controverted by the video evidence. As noted above, in his operative complaint, Plaintiff made several assertions. First, Plaintiff claimed that he was denied medical treatment following the assault and was placed in a holding cell for thirty minutes before another officer recognized that treatment was necessary. ECF No. 7, pp. 7, 9. Second, Plaintiff claimed he was taken to medical and four stitches were necessary. Id., p. 7. Third, Plaintiff claims there was no video of the medical treatment but "someone should have brought a camera." Id., p. 7. Someone did bring a camera.

The handheld video shows that just eight minutes after the alleged incident, at 6:08 a.m., Officer White narrated the incident while outside Plaintiff's cell door; Plaintiff can be seen through the window. UoF 19-16288 H.H. Video. White stated that Plaintiff was involved in an incident involving the use of reactionary force and that they were waiting for medical to evaluate Plaintiff. Id., 00:00-00:35. Plaintiff refused to give his identification

information to Officer White and argued with him for a period of time; eventually, Officer White walked away. Id., 00:33-01:30. While in the cell, Plaintiff paced, mumbled, and kicked the door stating "you [expletive] up my face." Id., 01:30-04:00. Officer White returned and gave Plaintiff a warning to refrain from his continued "disorderly conduct" and to not kick the door, but Plaintiff continued to argue with him. Id., 04:00-05:22. Officer White again left the area; and Plaintiff continued to pace quietly for several minutes. Id., 05:22-07:10. Plaintiff, at one point, asks to make a phone call. Id., 07:10. Eventually, Plaintiff provided his identification information to White. During the time Plaintiff is in the cell it is difficult to see his face clearly through the window with a grate over it. Sometimes Plaintiff is out of the view of the window. During the time Plaintiff is waiting, he does not touch his face, wipe his face, has no problem talking, makes no verbal complaints of any pain or comments related to any injury, and there are no physical indications that Plaintiff is in any pain. It is also relevant that, by radio, White continued to check on the status of the availability of the nurse.

At approximately 6:22 a.m., once the nurse's availability was confirmed, two officers opened the cell door, handcuffed Plaintiff, escorted him into the hall and then into the medical examination room next door. Id., 13:53. Plaintiff's face can be seen clearly; and his injury is not apparent. Id.,

14:03. Two officers remained in the medical room while Plaintiff received a post use of force examination. Id., 14:08. It is worth noting, there is no blood on Plaintiff's shirt. Id., 14:40. At one point in the video, there are a few blood droplets from Plaintiff's chin. Id., 15:55-16-00. Plaintiff refused medical attention at 6:24 a.m. and was escorted back to his cell, was placed inside and secured. Id., 16:41-18:25.

The fixed wing[1] video evidence provides a different angle of Plaintiff's return to his cell. Four prison officials escorted Plaintiff; one officer is on either side of Plaintiff and two are behind him. Just one officer is holding onto Plaintiff – on the right side holding his arm. Defendants' Exhibit A, UoF 19-16288 F.W. Video, 00:35. The prison officials escort Plaintiff up the flight of stairs and to a cell on the second level. Id., 00:48-01:22. Eventually, the officers leave the area. Id., 02:39-03:00. Plaintiff can be seen at the window of the cell door. Id., 03:20-03:37. Later, an officer entered the dorm area, remained on the lower level, and, seemingly, had a brief conversation with Plaintiff. Id., 03:40-04:01.

Plaintiff's accounting of the incident is blatantly contradicted by the record, so much so, that no reasonable jury could believe it. The uncontroverted evidence shows that after the use of force, Plaintiff was

---

[1] This video does not contain any audio.

Case No. 4:19-cv-494-WS-MAF

immediately taken to a cell to await medical treatment and was not denied medical attention for thirty minutes before another officer stepped in to take him to medical. Plaintiff did not receive stitches in his chin; and Plaintiff refused medical treatment. Finally, Plaintiff cannot demonstrate that his injury was more than *de minimis*. Thus, the Court cannot adopt Plaintiff's version of the facts for purposes of summary judgment. Scott, 550 U.S. at 380. Without evidence on each essential element of his claims, at this stage, Plaintiff cannot solely rely on his complaint. There are no genuine issues as to any material fact; and the motion for summary judgment is properly supported. Accordingly, the Defendants are entitled to summary judgment.

## V. Conclusion and Recommendation

For the reasons stated above, it is respectfully RECOMMENDED that Defendants' Motion for Summary Judgment, ECF No. 34, be GRANTED; and that the case be DISMISSED for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2). Finally, it is recommended that the Order adopting this Report and Recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

IN CHAMBERS at Tallahassee, Florida, on December 8, 2020.

/s/ Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).